UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| AVIE COHEN, | ) | No. 04 B 11482 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FISCHER INVESTMENT CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 A 4016 |
| | ) | |
| AVIE COHEN, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Debtor Avie Cohen needed a loan for The Joblotter, Inc., a liquidation business he ran with Holly Borchert. After reviewing the financial condition of Cohen and The Joblotter, including a list of The Joblotter's accounts receivable, Scott Fischer and Fischer Investment Capital, Inc. ("Fischer Investment") lent Cohen and The Joblotter $207,000. When Cohen and The Joblotter failed to repay the loan in full, Fischer Investment filed an action against them in Illinois state court, obtaining a default judgment. Before Fischer Investment could enforce the judgment, however, Cohen sought protection under chapter 7 of the Bankruptcy Code.

Fischer Investment then brought an adversary complaint in the bankruptcy objecting to the dischargeability of Cohen's debt. Count I of the complaint alleges that the remaining loan balance is nondischargeable under 11 U.S.C. § 523(a)(2)(B) because the list of accounts receivable was intentionally false and misleading. Count II alleges a separate claim under 11

U.S.C. § 523(a)(4), a claim unrelated to the loan, asserting that Cohen made off with a $3,500 check from a third party intended for Fischer.

Before the court is Cohen's motion for summary judgment on both counts of Fischer Investment's complaint. For the reasons set forth below, the motion is granted in part and denied in part.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

### 2. Facts

Viewed in the light most favorable to non-movant Fischer Investment, *see Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 666-67 (7th Cir. 2005), the undisputed facts are as follows.

#### a. The Loan

Avie Cohen and Holly Borchert ran the day-to-day operations of The Joblotter, an Illinois corporation. (Defendant's Response to Plaintiff's Statement of Facts required by Local Rule 7056-2 ("D. 7056-1 Resp.") at ¶¶ 2-3). According to Cohen, The Joblotter was in the business of "buying and selling obsolete merchandise, . . . ragged, and dirty merchandise." (Ex. 1 (Cohen dep. at 13) to P. 7056-2 Stmt.). Liquidation, he said, is "not a fancy industry." (*Id.* at 16). Fischer Investment is an Illinois corporation with its principal office in New Jersey. (P. 7056-2 Resp. at ¶ 3). Scott Fischer is its president. (Answer to Compl., ¶ 14).

Apparently needing operating capital, Cohen approached Fischer in early 2000 about the

-2-

possibility of Fischer Investment making a loan to The Joblotter and Cohen. (D. 7056-1 Resp. at ¶¶ 19-20). The discussions included what would be pledged as collateral to secure the loan. (*Id.*). During the discussions, Fischer asked for a list of The Joblotter's accounts receivable, and Borchert provided him with one.[1] (Ex. 3 (Borchert dep. at 29) to P. 7056-2 Stmt.).

The three-page, handwritten list purports to show The Joblotter's accounts receivable at different times in 2000. The first page is dated "3/9/00" and reflects receivables totaling $110,409.13. (Ex. A to D. Reply). The second page is dated "3/23/00" and shows receivables totaling $104,854.40. (*Id.*). The third page is headed simply "2000 Receivables" and has no total. (*Id.*). Most of the items on the first two pages have invoice numbers next to them, but some (totaling about $26,000) do not. (*Id.*). The items without invoice numbers, Borchert said, were "just hopeful." (Ex. 3 (Borchert dep. at 31) to P. 7056-2 Stmt.).

Cohen, Borchert, and Fischer differ on the accuracy of the accounts receivable list. Cohen testified at his deposition that he did not recognize the list, did not know whether it was given to Fischer, and so could not say whether the list was accurate. (Ex. 1 (Cohen dep. at 20) to P. 7056-2 Stmt.). Borchert, however, said she believed the list to be accurate at the time it was given to Fischer. (Ex. 3 (Borchert dep. at 29-30) to P. 7056-2 Stmt.). When Fischer was asked why he thought the list was inaccurate, he explained that "whatever was owed here was not paid to Joblotter and then submitted to us." (Ex. 9 (Fischer dep. at 47) to P. 7056-2 Stmt.). Fischer could not say "whether [the accounts receivable] were actually receivables that were collected . .

---

[1] What constitutes the list given to Fischer is not entirely clear. Exhibit A to Cohen's reply and Exhibit C to the complaint contain the same three-page list. Exhibit C to Cohen's Local Rule 7056-1 Statement, on the other hand, contains these three pages and two more dated "8/25/00" and "4/2/01," respectively. Because these additional two pages bear dates *after* the loan was made (and so could not have figured in Fischer Investment's decision to make it), and because the parties have not disputed which pages were given to Fischer, the court will assume that the three pages attached to Cohen's reply make up the operative list.

. or whether they were never real receivables to begin with." (*Id.* at 46).

On March 23, 2000, Fischer Investment lent Cohen and The Joblotter $207,000. (Answer to Compl., ¶ 12). As part of the transaction, Cohen and The Joblotter entered into a combined Note and Security Agreement in favor of Fischer Investment. (*Id.*; *see* Ex. A (Note and Security Agreement) to Compl.). Under the Security Agreement, Cohen and The Joblotter granted Fischer Investment a security interest in various assets, among them "all . . . accounts receivable . . . whether now existing or hereafter arising or acquired." (Ex. A to Compl.).

Cohen and The Joblotter ultimately defaulted on the loan. Fischer filed an action against them in the Circuit Court of Cook County, Illinois, alleging breach of the Security Agreement and Note by Cohen and The Joblotter and asserting other claims against Cohen individually. (P. 7056-2 Resp. at ¶¶ 4-7). On December 17, 2003, a default judgment was entered in the action against Cohen and The Joblotter for $510,678.85, plus fees and costs. (D. 7056-1 Resp. at ¶ 5).

### b. The Check

Sometime before December 2000, Cohen told Fischer about a man to whom Fischer refers only as "Marlis." (Ex. 9 (Fischer dep. at 49) to P. 7056-2 Stmt.). Marlis ran an enterprise called Advantage Trading. (*Id.* at 48-49). On Cohen's recommendation, Mid-America Bag (in which Fischer was indirectly an investor) sold some excess trash bags to Marlis.[2] (*Id.* at 49, 54; *see also* Ex. F (McDonald dep. at 20) to D. 7056-1 Stmt.). As of December 2000, Marlis still owed Mid-America Bag between $3,000 and $20,000, and Mid-America Bag was taking steps to

---

[2]     The parties here are more than a little careless about how they refer to participants to the many transactions here, often using interchangeably the names of business enterprises and the people who own or run them: saying that the trash bags were sold to Marlis rather than to Advantage Trading, for example. Because greater accuracy would not alter the outcome, however, this opinion simply recites the parties' version of events using their own terminology.

collect the amount owed. (Ex. 9 (Fischer dep. at 49-50) to P. 7056-2 Stmt.). Fischer told Mid-America Bag that he would assume responsibility for the Marlis debt since he felt guilty for having introduced Cohen and Marlis to Mid-America Bag in the first place. (*Id.* at 53).

Not wanting Fischer or Mid-America Bag to pursue legal action against Marlis, and feeling "morally responsible" for having introduced Fischer to Marlis in the first place (Ex. E (Cohen aff. at ¶ 8) to D. 7056-1 Stmt.), Cohen agreed to help Fischer collect the Marlis debt. (*Id.* at ¶¶ 8-9; Ex. 9 (Fischer dep. at 53) to P. 7056-2 Stmt.). Cohen volunteered to help collect the debt by selling goods for Advantage Trading and then delivering the proceeds to Fischer. (Ex. E (Cohen aff. at ¶¶ 4, 9) to D. 7056-1 Stmt.). In December 2001, The Joblotter sold goods for Advantage Trading to Princess Auto Limited and issued Princess Auto a $3,500 invoice. (P. 7056-2 Resp. at ¶ 26). Princess Auto paid the invoice, sending a $3,500 check to Cohen. (Ex. E (Cohen aff. at ¶ 11) to D. 7056-1 Stmt).[2]

Cohen and Fischer disagree about how the Princess Auto check was made payable. Cohen says the check was made payable to The Joblotter, not to Fischer Investment or anyone affiliated with Fischer Investment. (P. 7056-2 Resp. at ¶ 22; Ex. E (Cohen aff. at ¶¶ 3-4) to D. 7056-1 Stmt.). Although Fischer never actually saw the check (D. 7056-1 Resp. at ¶ 40; Ex. 9 (Fischer dep. at 54) to P. 7056-2 Stmt.), he says Cohen told him that the check was made payable to Fischer Investment (D. 7056-1 Resp. at ¶ 40; Ex. 9 (Fischer dep. at 54-55) to P. 7056-2 Stmt.).

---

[2] In its Rule 7056-2 response, Fischer Investment neither admits nor denies Cohen's version of these events but responds simply that Cohen's affidavit "states such." That is not a permitted response. Under Rule 7056-2, a movant's factual assertions can be admitted, or they can be denied. Other than a suggestion pursuant to Rule 56(f) that further discovery is necessary, there is no third option. *See Bank One v. Knopfler (In re Holstein)*, Nos. 00 B 18138, 03 A 638, 2004 WL 26516, at *1 n.1 (Bankr. N.D. Ill. Jan. 5, 2004). Factual assertions to which Fischer Investment has made this coy response are deemed admitted. *See* L.R. 7056-2(B); *Davis v. Illinois State Police Fed. Credit Union (In re Davis)*, 244 B.R. 776, 782 (Bankr. N.D. Ill. 2000).

Upon receiving the check, Cohen deposited it in his own account. (*See* Ex. 10 (Mem. dated May 17, 2002) to P. 7056-2 Stmt.). Soon thereafter, Fischer demanded the proceeds of the check, and Cohen agreed to "take care of this" by the end of January 2002. (*Id.*). In May 2002, Fischer wrote a memorandum to Cohen and Borchert stating: "you have indicated that you will pay me the $3,500 that Marlis paid to me, but which you deposited." (*Id.*). Fischer asked Cohen and Borchert to sign the memorandum indicating their agreement with its contents, and Cohen, at least, did so. (*Id.*).

Cohen and Fischer also dispute whether Cohen ever paid Fischer Investment the $3,500 or any part of it. Cohen says that between December 2002 and April 2003, he sent $2,500 to Fischer in the form of five checks, each for $500, with the word "Marlis" written in the "memo" space. (Exs. E and L to D. 7056-1 Stmt.). He also supplies the print-out of what seems to be a February 2, 2003 e-mail from Fischer stating: "Please indicate how you will re-pay the $2,500 of Marlis' money which you still owe me." (Ex. K to D. 7056-1 Stmt.). Fischer claims the five checks were not meant to pay the Marlis debt but were meant as payments on the March 2000 loan to Cohen and The Joblotter. (Ex. 9 (Fischer dep. at 58-59) to P. 7056-2 Resp.).

**3. Discussion**

Cohen's motion for summary judgment on Fischer Investment's section 523(a)(2)(B) claim in Count I will be granted. Fischer Investment has supplied no evidence that the list of accounts receivable Borchert provided was false – or, if false, that Cohen knew of its falsity and so intended to defraud Fischer Investment. The motion for summary judgment on the section 523(a)(4) claim in Count II, however, must be denied. Fischer Investment has adduced enough evidence to raise a factual question about whether Fischer had a right to the $3,500 he claims Cohen appropriated.

### a. Summary Judgment

The summary judgment standard is familiar. On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation omitted). When a defendant moves for summary judgment, consequently, the plaintiff has the obligation to make out his prima facie case. To do so, he must adduce evidence on every element of his claim on which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Failing that, summary judgment will be entered for the defendant. *See, e.g., Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 694 (7th Cir. 2005).

### b. Count I: Section 523(a)(2)(B)

Cohen is entitled to summary judgment on Fischer Investment's claim under section 523(a)(2)(B), the claim that Cohen induced Fischer Investment to make the loan by fraudulently submitting a false list of The Joblotter's accounts receivables.[4]

---

[4]   In its summary judgment materials, Fischer Investment also makes a great deal about assorted items of personal property (a Rolex watch, various sculptures, a "collector's room full of automobile memorabilia," and so on) that secured the loan. Cohen showed these items to Fischer at Cohen's house before the loan was made and appears to have made representations about the value of some of them. (*See* P. 7056-2 Stmt. at ¶¶ 19-22). As far as the record shows, however, these representations were oral. Because section 523(a)(2)(B) must be based on "a

To prevail on a section 523(a)(2)(B) claim, a creditor must prove five elements: (1) the debtor made a statement in writing; (2) the statement concerned the debtor's financial condition; (3) the statement was materially false; (4) the debtor made the representation with an intent to deceive the creditor; and (5) the creditor actually and reasonably relied on the misrepresentation. *In re Morris,* 223 F.3d 548, 552 (7th Cir. 2000); *In re Sheridan,* 57 F.3d 627, 633 (7th Cir. 1995). The debt is presumed to be dischargeable, *see In re McFarland,* 84 F.3d 943, 946 (7th Cir. 1996), and will be discharged unless the creditor can demonstrate these elements by a preponderance of the evidence, *see Grogan v. Garner,* 498 U.S. 279, 291 (1991).

Some of these elements Fischer Investment has managed to establish:

• The accounts receivable list, handwritten on three pieces of paper, was a "statement in writing" and was Cohen's statement. Although Borchert, not Cohen, made the list and gave it to Fischer, section 523(a)(2)(B) encompasses a statement that someone else has prepared if the debtor later adopts it. *Household Fin. Corp. v. Howard (In re Howard),* 73 B.R. 694, 702 (Bankr. N.D. Ind. 1987). Fischer's testimony that he and Cohen discussed the receivables after the loan was made (*see* Ex. 9 (Fischer dep. at 47-48) to P. 7056-2 Stmt.), though meager, is arguably enough at this stage to infer Cohen's adoption of the list.

• The statement concerned Cohen's financial condition because it concerned The Joblotter's financial condition. Section 523(a)(2)(B) applies not only to statements about the financial condition of the debtor but also to statements about "an insider's financial condition." 11 U.S.C. § 523(a)(2)(B)(ii). An "insider" includes a corporation of which the debtor was a

---

statement in writing," 11 U.S.C. § 523(a)(2)(B); *see also Berkson v. Gulevsky (In re Gulevsky),* 362 F.3d 961, 963-64 (7th Cir. 2004), and because there has been no showing that Cohen's representations about his personal property were other than oral, those representations, even if false, lend no support to Fischer Investment's claim.

"director, officer, or person in control." 11 U.S.C. § 101(31)(A)(iv); *see, e.g., Bombardier Capital, Inc. v. Rodi (In re Rodi)*, 163 B.R. 1017, 1023 (N.D. Ill. 1994). Cohen controlled the daily operations of The Joblotter, making the corporation his "insider."

- The statement was one about The Joblotter's financial condition. A list of a corporation's accounts receivable is a statement about its financial condition. *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 608-09 (8th Cir. 1997); *see also Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 781-84 (Bankr. E.D. Tenn. 2003).

- The evidence suggests that Fischer Investment relied on the statement, extending the loan based at least in part on the list of accounts receivable. Business loans secured by the borrower's accounts receivable are common, and although the accounts receivable list here was unofficial and handwritten, a trier of fact could find Fischer Investment's reliance on The Joblotter's list reasonable.

The section 523(a)(2)(B) claim falls apart, though, on the two remaining elements, both critical. First, no evidence shows that the list of accounts receivable was false, let alone materially so. On the contrary, Fischer's deposition testimony makes clear that he simply decided the list must have been false because Cohen failed to pay back the loan in full. Fischer conceded he had no idea whether the receivables were actually collected (and if they were, the list was accurate), or whether the items on the list were "never real receivables to begin with." (Ex. 9 (Fischer dep. at 46) to P. 7056-2 Stmt.). Cohen's failure to repay the loan, however, proves only that the loan was not repaid; the rest of Fischer's theory is speculation. Speculation will not prevent summary judgment. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 591 (7th Cir. 1997).

Fischer Investment tries to generate an issue of fact on the falsity element with Borchert's

deposition testimony. Fischer Investment points to Borchert's statements that The Joblotter's receivables in the last year of the business ranged from $200 and $2,000, and that the higher figures on the list were not "typical." (Ex. 3 (Borchert dep. at 30-31) to P. 7056-2 Stmt.). That the figures were not "typical," however, does not mean the figures were false. Borchert never said they were false; on the contrary, she said they were accurate. (*Id.* at 29-30). Fischer Investment also asserts that Borchert characterized the figures on the list as no more than "hopeful." She did not. Borchert distinguished between receivables on the list with "an invoice number" and those without. The latter, she said, were "just hopeful." (*Id.* at 31). None of this is enough to warrant an inference in Fischer Investment's favor.

The second element on which the section 523(a)(2)(B) claim founders is fraudulent intent. In the absence of any false statement, of course, there can be no intent to defraud. Even assuming the accounts receivable list was false, however, no evidence shows that *Cohen* gave the list to Fischer intending to induce Fischer Investment to make the loan, *see Sheridan*, 57 F.3d at 633 (discussing requisite intent), because no evidence shows that *Cohen* even knew about the list. Borchert, not Cohen, gave Fischer the list. (Ex. 3 (Borchert dep. at 29) to P. 7056-2 Stmt.). When the list was presented to Cohen at his deposition, he said he did not recognize it and denied knowing whether it was ever given to Fischer. (Ex. 1 (Cohen dep. at 20) to P. 7056-2 Stmt.). Fischer Investment offers nothing to prove otherwise.[5]

---

[5] Fischer Investment tries to make its case by calling the credibility of Cohen's denials into question, noting that Cohen has a twenty-year old conviction for felony insurance fraud. (Ex. 1 (Cohen dep. at 56) to P. 7056-2 Stmt.; D. 7056-1 Resp. at ¶ 1). The dubious admissibility of this little tidbit aside, *see* Fed. R. Evid. 609(b), Fischer Investment cannot meet its burden of proof and stave off summary judgment merely by discrediting Cohen's denials. *See Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984) (noting that discredited defense testimony "is not considered a sufficient basis for drawing a contrary conclusion"); *In re Okon*, 310 B.R. 603, 608-09 (Bankr. N.D. Ill. 2004). Some affirmative showing from Fischer Investment is necessary.

Because Fischer Investment has offered no evidence that the accounts receivable list was false, or, if false, that Cohen knew it was false and intended to deceive Fischer Investment, Cohen is entitled to summary judgment on Count I. *Cf. Frankford Bank v. Chryst (In re Chryst),* 177 B.R. 486, 497-98 (Bankr. E.D. Pa. 1994) (rejecting lender's section 523(a)(2)(B) claim based on debtor's list of accounts receivable where no evidence showed the list was false).

### c. Count II: Section 523(a)(4)

Cohen is not entitled to summary judgment, however, on the section 523(a)(4) claim in Count II, the claim that he kept for himself a $3,500 check given to him for Fischer.

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Embezzlement for purposes of this section is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[6] *In re Weber,* 892 F.2d 534, 538 (7th Cir. 1989) (internal quotation omitted); *see also Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1172-73 (6th Cir. 1996). To prevail on an embezzlement claim, a creditor must prove two elements: (1) the debtor appropriated the creditor's property for the debtor's own benefit; and (2) the debtor did so with fraudulent intent or deceit. *Weber,* 892 F.2d at 538; *see also Schaffer v. Dempster (In re Dempster),* 182 B.R. 790, 802 (Bankr. N.D. Ill. 1995).

The evidence in the record reveals obvious issues of fact on both elements. In seeking

---

[6] Although Fischer has alleged "larceny" as the basis for his section 523(a)(4) claim, he means embezzlement. Larceny is the wrongful taking of another's property with the fraudulent intent to convert it without the owner's consent. *Kaye v. Rose (In re Rose),* 934 F.2d 901, 903 (7th Cir. 1991). Embezzlement differs from larceny in that the original taking of the property was lawful or occurred with the owner's consent. *Rae v. Scarpello (In re Scarpello),* 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002). Here, the parties agree that Cohen came into possession of the $3,500 check lawfully. The dispute concerns what he did with the check once he had it.

summary judgment, Cohen takes the position that he never had any obligation to pay Fischer $3,500. As Cohen tells it, he simply volunteered to help Fischer collect what Marlis owed by selling goods for Advantage Trading and then passing the proceeds on to Fischer as payment. (Ex. E (Cohen aff. at ¶¶ 4, 9) to D. 7056-1 Stmt.). The $3,500 check Cohen received *could* have been passed on to Fischer, true enough. But according to Cohen, the check was made payable to The Joblotter, not to Fischer Investment (*id.* at ¶¶ 3-4), and so Cohen had no legal obligation to pass it on. In effect, Cohen says, he cannot be liable for intending to give Fischer a gift and then changing his mind.

Fischer, though, counters with evidence that the check was his. Although he never saw the actual check, Fischer testified that Cohen told him the check was made payable to Fischer Investment, not to The Joblotter. (*See* D. 7056-1 Resp. at ¶ 40; Ex. 9 (Fischer dep. at 54-55) to P. 7056-2 Stmt.). Cohen also later signed a memorandum Fischer drafted in which Cohen agreed with a description of the $3,500 as money "that Marlis paid to me [Fischer], but which you [Cohen] deposited." (*See* Ex. 10 (Mem. dated May 17, 2002) to P. 7056-2 Stmt.). Fischer offers further evidence showing that Cohen considered the $3,500 a debt he owed to Fischer Investment. The memorandum Cohen signed embodied his agreement to pay the $3,500, and Cohen admits having sent Fischer a series of $500 checks in partial payment of that amount – not the actions of someone who believes he owes nothing.

Even accepting Cohen's version of how the $3,500 check came to exist, then, Fischer Investment has offered evidence on each element of its claim sufficient to withstand summary judgment. From the evidence offered, a reasonable trier of fact could find (1) that Cohen appropriated a check belonging to Fischer Investment for his own benefit, and (2) that Cohen acted with fraudulent intent -- in the sense that he knowingly took the check and did so intending

-12-

to deprive Fischer Investment of it.[2] *See U.S. Life Title Ins. Co. v. Dohm*, 19 B.R. 134, 138 (N.D. Ill. 1982) (finding fraudulent intent proved where state judgment showed debtor acted "willfully and intentionally").

Because Fischer Investment has established a prima facie case on its section 523(a)(4) embezzlement claim, and because the parties' conflicting versions of events disclose factual questions for trial, Cohen's motion for summary judgment on Count II is denied.

### 4. Conclusion

The motion of defendant Avie Cohen for summary judgment on the complaint of plaintiff Fischer Investment Capital, Inc. is granted as to Count I but denied as to Count II. The claim in Count II will be set for trial, and a final pre-trial order in the customary form will be issued. A separate order will be entered in accordance with this opinion.

Dated: December 2, 2005

A. Benjamin Goldgar
United States Bankruptcy Judge

---

[2] In discussing the elements of embezzlement under section 523(a)(4), some courts get hung up on the "fraud" in "fraudulent intent." Perhaps because common law fraud normally requires a misrepresentation or omission, these courts mistakenly suggest that "fraudulent intent" means the embezzlement must have involved a misrepresentation or omission before the resulting debt will be nondischargeable. *See, e.g., Standard Bank & Trust Co. v. Iaquinta (In re Iaquinta)*, 95 B.R. 576, 580 (Bankr. N.D. Ill. 1989) (holding that embezzlement was not shown because debtor used embezzled funds to pay other debts "openly and without concealment"). Although some misrepresentation or omission on the debtor's part will tend to prove intent, *see, e.g., Cavalear Ins. Agency, Inc. v. Rico (In re Rico)*, 133 B.R. 880, 882 (Bankr. N.D. Ohio 1991) (finding intent where debtor altered books and destroyed checks to hide embezzlement), neither is a prerequisite. All that must be shown is an intent permanently to deprive another of his property. *See, e.g., KMK Factoring, L.L.C. v. McKnew (In re McKnew)*, 270 B.R. 593, 632-33, 653 (Bankr. E.D. Va. 2001) (finding intent where evidence showed debtor intended permanently to deprive creditor of property and noting that evidence of debtor's efforts to conceal his actions merely "buttress[ed]" that conclusion).